# WARDLAW v. CALIFORNIA RAILWAY COMPANY.

## No. 15,880; December 23, 1895.

### 42 Pac. 1075.

Carriers—Injury to Passenger in Boarding Car.—Where a passenger goes on the side of a platform car opposite the platform, and not at the place arranged to receive passengers, and attempts to climb on the train from between the cars, and in so doing places his foot on the bumper, where it was injured by the engine moving up to

couple the train, he is guilty of contributory negligence, and cannot recover.[1]

**Negligence—When a Question for Court.**—Where the facts are undisputed and the inference of negligence is irresistible, the question is one of law for the court.

APPEAL from Superior Court, Alameda County; John Ellsworth, Judge.

Action by James J. Wardlaw, by James Wardlaw, his guardian ad litem, against the California Railway Company. Judgment of nonsuit and plaintiff appeals. Affirmed.

Cross, Hall, Ford & Kelly for appellant; Chickering, Thomas & Gregory for respondent.

SEARLS, C.—This action is brought to recover damages from the defendant, a corporation, and a carrier of passengers by railroad, for personal injuries sustained by the infant plaintiff, while boarding defendant's car, at Fruitvale, in the county of Alameda. At the trial, and upon the close of the evidence on the part of plaintiff, counsel for defendant moved for a nonsuit, upon the ground that the evidence of the plaintiff showed that he, the said plaintiff, was guilty of contributory negligence. The motion was granted by the court, and judgment entered in favor of defendant for costs. Plaintiff excepted in due form, and prosecutes this appeal from the judgment of nonsuit, and assigns the granting of the motion for nonsuit as error.

It was admitted at the trial that plaintiff was, at the date of the accident, of the age of about eighteen years, and that James Wardlaw had been duly appointed his guardian. Also, that the defendant corporation owned and operated a steam railroad in the county of Alameda, together with engines, cars, etc., running between the villages of Fruitvale and Laundry Farm in said county, and was a common carrier of passengers for hire over said railroad. The testimony of plaintiff was to the effect that on Sunday, May 21, 1893, he purchased a

a Cited and followed in Robinson v. Helena Light & Ry. Co., 38 Mont. 243, 99 Pac. 844, where, as the court say, "the plaintiff undertook to board the car at a moment when he knew it was not at its proper place, from a direction from which he could not be seen, and without notice to the motorman or conductor so that they could look after his safety."

ticket in San Francisco for Laundry Farm, and in company with a party of young friends rode on the Southern Pacific cars to Fruitvale, at which point the road of defendant begins. The cars of defendant were what plaintiff terms picnic cars, and were platform cars, with a railing around them and seats extending across. The parties were going to a private picnic and approached the rear end of the train, as we must infer from the fact that the engine was at the other end, but probably not attached to the train. Upon approaching the train, which stood in front of defendant's depot, plaintiff passed forward upon the right-hand side of the cars, looking forward, and, seeing no steps, he attempted to climb on a car at the end where it was attached to another car, by putting his foot upon a brakebeam, his hands on the platform, and swinging himself up, so that he placed his other foot upon the bumper just in time to have it caught between the bumpers and crushed as the engine started the cars back and pressed them together, probably in coupling onto the train. Plaintiff heard no bell, whistle or other signal from the engine. After his injury, plaintiff saw that, on the other or left-hand side of the car (on the depot side) there was an opening in the railing of the car, and steps by which to ascend to it. On cross-examination plaintiff said, among other things: "I cannot handle myself as well as a boy who has the full use of his limbs. I never have been able to. I have to be careful. I cannot get around as easily as other boys, and know that perfectly well. This is only on account of being fleshy Am not injured in any other way." There were several other witnesses on the part of the plaintiff, from whose testimony it is to be inferred that the Laundry Farm train came in about the time plaintiff and his party of about thirty persons arrived at the station. The train came down the track with the engine in advance, which engine was switched to a sidetrack and run back to be attached to the other end of the train, at which time plaintiff and some three others of the party attempted to board the car on the right-hand side, and between the ends of two cars. The witnesses concur in stating: (1) That they heard no signal from the engine as it backed down and coupled on the train. (2) That the depot was on the left-hand side, and that there were steps and facilities for boarding the cars on that side, and none on the other, and that ample time was given for passengers to board the train. (3) The cars were

ordinary platform freight cars, with a railing constructed around them, except with an opening on the left-hand side, and steps for the entry and exit of passengers, and a cover over the top. (4) There is no evidence tending to show that defendant knew or was aware of the position of plaintiff when it attached its engine to the train. (5) At the moment of plaintiff's injury it is to be inferred the cars were simply crowded together by the shock of attaching the engine. John Noriega, a witness, at folio 44 of the transcript, says: "I felt the shock of the car just as though the engine had been hitched on, and then heard the scream."

The sole question in the case is this: Was there such evidence of contributory negligence on the part of the plaintiff as to preclude a recovery, conceding the defendant to have been negligent? Negligence, though variously defined, may be said to be "the failure to do what a reasonable and prudent person would ordinarily do under the circumstances of the situation, or doing what such a person under the existing circumstances would not have done": Railroad Co. v. Jones, 95 U. S. 439, 24 L. Ed. 506. "Contributory negligence, in its legal signification, is such an act or omission on the part of a plaintiff, amounting to a want of ordinary care, as, concurring or co-operating with the negligent act of the defendant, is a proximate cause or occasion of the injury complained of": Beach on Contributory Negligence, sec. 7. It is the duty of a railway company, as a common carrier of passengers, to keep its stations and the approaches thereto in such a condition that those having occasion to use them for the purposes for which they are designed may do so with safety. So, too, the duty devolves upon it of preparing all proper means of ingress and egress to and from its cars devoted to the carriage of passengers. This duty performed by the railway company, the reciprocal duty devolves upon one who would take passage by the cars to use his natural faculties in selecting such means and place of access thereto as have been provided for that purpose, and as promise immunity from danger. Not to do so is evidence of negligence on the part of the passenger, and where, as in the present case, the plaintiff went upon the side of the car opposite the platform, and presumably not the place arranged to receive

passengers, and, finding no place of access, attempted to climb upon the train from between the cars, with the barrier of a railing before him to be scaled when he reached the level of the car floor, and in so doing placed his foot upon the bumper, where it was caught by the connecting car, pressed back by the engine moving up to couple on the train, but one inference can be drawn from the facts, and that is that he was guilty of such negligence as is denominated negligence in law.

As a general proposition, cases of negligence (to which those of contributory negligence form no exception) present a mixed question of law and fact, in which it devolves upon the court to say, as matter of law, what is or amounts to negligence, and upon the jury to determine, as matter of fact, whether or not, in the particular case, the facts in proof warrant the imputation of negligence. Where, however, the facts are undisputed, and the inference of negligence is irresistible and not open to debate, doubt or rational difference of opinion, the question becomes one of law to be passed upon by the court: Dufour v. Railroad Co., 67 Cal. 319, 7 Pac. 769; Long v. Railroad Co., 96 Cal. 269, 31 Pac. 170; Jamison v. Railroad Co., 55 Cal. 593; Van Praag v. Gale, 107 Cal. 438, 40 Pac. 555; Maumus v. Champion, 40 Cal. 121; Davis v. Button, 78 Cal. 247, 18 Pac. 133, and 20 Pac. 545; Meeks v. Railroad Co., 52 Cal. 602; Glascock v. Railroad Co., 73 Cal. 137, 14 Pac. 518; Holmes v. Railway Co., 97 Cal. 161, 31 Pac. 834. That plaintiff's negligence was the proximate cause of his injury needs no argument, and there is no evidence of wanton or willful negligence to bring it within the purview of that class of cases of which Esrey v. Pacific Co., 103 Cal. 541, 37 Pac. 500, is a fair sample. The gist of that case is involved in a single paragraph, as follows:

"The party who last has a clear opportunity of avoiding the accident, notwithstanding the negligence of his opponent, is considered responsible."

In the present case there is nothing to indicate that defendant had any knowledge of the perilous position of plaintiff. Its negligence consisted in backing its engine against the train without a warning signal, and for this negligence plaintiff is not entitled to recover because of his own negli-

gence, without which no harm would have come to him. The judgment appealed from should be affirmed.

We concur: Vanclief, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment appealed from is affirmed.